**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

------------------------------------------------------------x

LUCIEN GOUGEON and LOURDES CASTRO,
individually and on behalf of all others similarly
situated,

               Plaintiffs,

       v.

CHICAGO TITLE INSURANCE COMPANY,
et al.,

               Defendants.

------------------------------------------------------------x

Case No.: 1:08-cv-10402-PBS

LEAVE TO FILE GRANTED
ON DECEMBER 18, 2008

 

**DEFENDANTS' JOINT REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF THEIR MOTION TO
DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

I.   *TWOMBLY* SETS FORTH THE PLEADING STANDARD FOR ALL
     SHERMAN ACT SECTION ONE CLAIMS. .............................................................. 2

II.  DEFENDANTS' PARTICIPATION IN STATUTORILY AUTHORIZED
     RATING BUREAUS IN OTHER STATES DOES NOT PROVIDE AN
     ADEQUATE BASIS FOR A CLAIM OF A CONSPIRACY TO SET RATES IN
     MASSACHUSETTS. ................................................................................................... 5

III. PLAINTIFFS' ALLEGATIONS OF PRE-*TWOMBLY* "PLUS FACTORS" ARE
     INSUFFICIENT UNDER *TWOMBLY*. ...................................................................... 10

IV.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE
     CORPORATE PARENTS. ........................................................................................... 14

V.   PLAINTIFFS FAIL TO DEFEND THEIR TWO REMAINING STATE LAW
     CLAIMS. .................................................................................................................... 15

          A.   Plaintiffs Concede That the Court Should Decline to Exercise
               Supplemental Jurisdiction If It Dismisses the Federal Claims. ................ 15

          B.   Plaintiffs Concede That They Cannot Pursue Their State Law
               Claims Against Title Insurers from Whom They Did Not Purchase
               Title Insurance. ......................................................................................... 16

          C.   Plaintiffs Fail to Defend Their Claim Under the Massachusetts
               Consumer Protection Act. ......................................................................... 16

          D.   Plaintiffs' Unjust Enrichment Claim Should Be Dismissed. ................... 17

VI.  THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
     PREJUDICE AND WITHOUT FURTHER LEAVE TO AMEND. .............................. 18

CONCLUSION ........................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Arista Records LLC v. Lime Group LLC,* 532 F. Supp. 2d 556 (S.D.N.Y. 2007) ......................... 8

*Arnold Pontiac-GMC v. Budd Baer, Inc.,* 826 F.2d 1335 (3d Cir. 1987)...................................... 6

*Arnold Pontiac-GMC v. General Motors Corp.,* 786 F.2d 564 (3d Cir. 1986) ............................. 7

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) ....................................................... *passim*

*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask., Inc.,* 203 F.3d 1028 (8th Cir. 2000)................ 7

*Boswell v. Zephyr Lines, Inc.,* 606 N.E.2d 1336 (Mass. 1993)..................................................... 17

*Brennan v. Corcord EFS, Inc.,* 369 F. Supp. 2d 1127 (N.D. Cal. 2005) ..................................... 14

*Brooke Group v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209 (1993) ............................. 13

*Cohen v. Warner Chilcott Pub. Ltd. Co.,* 522 F. Supp. 2d 105 (D.D.C. 2007) ........................... 18

*Columbia Air Servs. Inc. v. Fidelity Mgmt. Trust Co.,*
   07-11344, 2008 WL 4457861 (D. Mass. 2008)......................................................................... 3

*Commonwealth v. DeCotis,* 366 Mass. 234, 316 N.E.2d 748 (Mass. 1974)................................ 16

*Conley v. Gibson,* 355 U.S. 41 (1957) ........................................................................................ 4

*DM Research v. College of American Pathologists,* 170 F.3d 53 (1st Cir. 1999).....................2-3

*Fuentes v. South Hills Cardiology,* 946 F.2d 196 (3d Cir. 1991) ............................................... 11

*Gemco Latinoamerica, Inc. v. Seiko Time Corp.,* 685 F. Supp. 400 (S.D.N.Y. 1988)................ 15

*Halver v. Welle,* 266 P.2d 1053 (Wash. 1954).......................................................................... 18

*In re Bath & Kitchen Fixtures Antitrust Litig.,*
   No. 05-cv-00510, 2006 WL 2038605 (E.D. Pa. July 19, 2006) ............................................... 5

*In re Digital Music Antitrust Litig.,*
   06 MDL No. 1780, 2008 WL 4531821 (S.D.N.Y. Oct. 9, 2008) ....................... 4, 9, 11, 12, 17

*In re Elevator Antitrust Litig.,* 502 F.3d 47 (2d Cir. 2007)........................................... 3, 4, 5, 6, 7

*In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011 (N.D. Cal. 2007).... 4, 5, 9

*In re LaBranche Sec. Litig.,* 405 F. Supp. 2d 333 (S.D.N.Y. 2005) ........................................... 14

*In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953 (N.D. Cal. 2007) ............. 5, 10, 11

*In re LTL Shipping Servs. Antitrust Litig.*,
No. 08-md-1895, 2009 WL 323219 (N.D. Ga. Jan. 28, 2009) .................................... 2, 3- 4, 12

*In re OBS Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56573 (E.D. Pa. 2007).............. 15

*In re Potash Antitrust Litig.*, 954 F. Supp. 1334 (D. Minn. 1996), *aff'd sub nom.*,
*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask., Inc.*, 203 F.3d 1028 (8th Cir. 2000)............ 6

*Kendall v. Visa U.S.A. Inc.*, No. C 04-04276, 2005 WL 2216941 (N.D. Cal. July 25,
2005), *aff'd*, 518 F.3d 1042 (9th Cir. 2008) ............................................................... 4

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) .................................... 4, 8

*Matsushita Electric Indus. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..................................... 14

*Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV409, 2006 WL 1699603
(D. Conn. Jun. 19, 2006)........................................................................................... 14

*Nisselson v. Lernout*, 568 F. Supp. 2d 137 (D. Mass. 2008) ......................................... 3

*Pierce Cty. v. State*, 185 P.3d 594 (Wash. Ct. App. 2008) ........................................... 17

*Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F. Supp. 744 (E.D. Va. 1987)............. 14-15

*Rick-Mik Enters. Inc.  v. Equilon Enters. LLC*, 532 F.3d 963 (9th Cir. 2008) ............................ 13

*Schafer v. State Farm*, 507 F. Supp. 2d 587 (E.D. La. 2007) ....................................... 10

*Segelman v. City of Springfield*, 561 F. Supp. 2d 123 (D. Mass. 2008) .................................. 18-19

*Singleton v. Naegeli Reporting Corp.*, 175 P.3d 594 (Wash. Ct. App. 2008) ............................ 18

*Stand Energy Corp. v. Columbia Gas Transmission Corp.*,
373 F. Supp. 2d 631 (S.D. W. Va. 2005)................................................................... 17-18

*United States v. Bestfoods*, 524 U.S. 51 (1998) ........................................................ 15

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*,
516 F. Supp. 2d 270 (S.D.N.Y. 2007) .................................................................. 10

*West Boylston Cinema Corp. v. Paramount Pictures Corp.*,
No. CIV A. 98-00252, 2000 WL 1468513 (Mass. Sup. Ct. Sept. 21, 2000) ...................... 16-17

## STATUTES

11 U.S.C. § 301(b) ..................................................................................................... 14

28 U.S.C. § 1367(c)(3) ............................................................................................... 16

Iowa Code § 16.3(15) ................................................................................................ 12

Iowa Code § 16.91 ..................................................................................................... 12

Iowa Code § 515.48(10) ............................................................................................ 12

S.F. 370, 52d Gen. Assmb. ch. 258 § 5 (Iowa 1947) ............................................... 12

Mass. Gen. Laws Ann. ch. 93A § 2 .......................................................................... 16

Mass. Gen. Laws Ann. ch. 174A § 6(b) ..................................................................... 6

Mass. Gen. Laws Ann. ch. 175A § 6(b) ..................................................................... 6

N.J. Stat. § 17:46B-42(b) ............................................................................................ 8

N.Y. Ins. Law § 2306 ................................................................................................... 8

Ohio Rev. Code § 3935.04 .......................................................................................... 8

40 P.S. § 910-37(b) ...................................................................................................... 8

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 2

6 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (2d ed. 2003) ¶ 1434c ...................... 11

Michael Blechman, *Conscious Parallelism, Signaling and Facilitating Devices: The Problem of Tacit Collusion Under the Antitrust Laws*, 24 N.Y. L. Sch. Rev. 881 (1979) . 10, 11

# PRELIMINARY STATEMENT[1]

Plaintiffs' opposition brief ("Pls. Opp.") confirms that the Amended Complaint does not allege facts sufficient to suggest the existence of an agreement to fix title insurance rates in Massachusetts.  None of Plaintiffs' allegations, taken either individually or collectively, satisfy the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Therefore, the Amended Complaint should be dismissed.

As Plaintiffs' Opposition exposes, Plaintiffs' sole basis for their price fixing claim is Defendants' membership in state-authorized and licensed rating bureaus in four states other than Massachusetts and Defendants' membership in industry trade associations.  Plaintiffs assert that these memberships provide "direct" evidence that Defendants "conspired" to fix title insurance rates in Massachusetts.  However, Plaintiffs offer no support for their baseless speculation.  The Amended Complaint -- like the complaint before it -- contains *no* factual allegations that suggest an agreement exists relating to title insurance rates in Massachusetts.  Plaintiffs' imagination as to what could have occurred is insufficient to plausibly suggest the existence of a conspiracy to fix rates in Massachusetts.

The other allegations relied upon by Plaintiffs are also insufficient to allege an agreement to fix rates in Massachusetts.  Plaintiffs' allegations of motive, industry concentration, and other background circumstances at most suggest the existence of an oligopolistic market and are precisely the kind of allegations that were held to be insufficient in *Twombly*.  Plaintiffs also fail to state a claim against the corporate parents.

---

[1] The parties previously stipulated that Defendants have until February 19, 2009 to file a reply brief in further support of their motion to dismiss (docket numbers 43 & 44).  (Docket number 48).

In addition to dropping two of their five claims,[2] Plaintiffs do not dispute that if the Court dismisses Plaintiffs' Sherman Act claim, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' two remaining state law claims.   Beyond that, Plaintiffs concede Defendants' argument that Plaintiffs' claims for violation of the Massachusetts Consumer Protection Act and unjust enrichment can only be asserted against the companies from which they purchased title insurance, entirely failing to address it.   Plaintiffs also fail to address Defendants' other arguments explaining why Plaintiffs' state law claims fail.   Accordingly, the Amended Complaint should be dismissed with prejudice.[3]

## ARGUMENT

I.  ***TWOMBLY* SETS FORTH THE PLEADING STANDARD FOR ALL SHERMAN ACT SECTION ONE CLAIMS.**

Plaintiffs admit that in order to survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." Pls. Opp. at 14 (citing *Twombly*, 127 S. Ct. at 1965).   Under *Twombly*, a complaint must be dismissed if it does not allege "enough facts to state a claim that is plausible on its face." 127 S. Ct. at 1974.   "A plaintiff cannot state an antitrust claim by merely showing parallel conduct and from it divine that an agreement must be the source from which the parallel conduct arose." *In re LTL Shipping Servs. Antitrust Litig.*, No. 08-md-1895, 2009 WL 323219, at *8 (N.D. Ga. Jan. 28, 2009).   "[W]hile the plaintiff's 'facts' must be accepted as alleged, this does not automatically extend to '[b]ald assertions, subjective characterizations and legal conclusions,' . . . further . . . 'the factual allegations must be specific enough to justify 'drag[ging] a defendant past the pleading threshold.'" *DM Research, Inc.   v. College of*

---

[2] Plaintiffs voluntarily dismissed Counts III and V of their Amended Complaint. Pls. Opp. at 2 n.3.

[3] In response to a similar motion to dismiss, on January 29, 2009, the same Plaintiffs' counsel voluntarily dismissed with prejudice the nearly identical Amended Complaint in *Nixon v. Chicago Title Ins. Co.*, No 3:08-cv-369 (M.D. Fla.).  *See* Def. Mem. at 1 n.1.

*American Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (citations omitted).   "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Id.*

Plaintiffs attempt to distinguish *Twombly* by asserting that the Amended Complaint contains "direct allegations" of conspiracy.  Pls. Opp. at 15.  Merely saying it does not make it so.  The Amended Complaint contains nothing even remotely resembling "direct allegations of conspiracy" to fix rates in Massachusetts.  Plaintiffs identify no document, e-mail or other communication that plausibly suggests a coordinated effort to charge allegedly supra-competitive title insurance rates in Massachusetts at any point in time, let alone over a four-year period.  Am. Compl. ¶ 171.  "Such 'conclusory allegation[s] of agreement at some unidentified point do [] not supply facts adequate to show illegality.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2d Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1966).  When stripped of its conclusory language, the Amended Complaint is devoid of *any* allegations concerning *any* conspiratorial conduct pertaining to Massachusetts rates.  Just as in *Twombly*, "[a]part from identifying a [four]-year span in which the § 1 violations were supposed to have occurred . . . the pleadings mention[] no specific time, place, or person involved in the alleged conspiracies," and "furnish[] no clue as to which of the [Defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place."  127 S. Ct. at 1970 n.10.

Plaintiffs rely on implausible and unsupported inferences -- inferring that participation in statutorily authorized rating bureaus in other states and industry trade organizations supports a claim of conspiracy in Massachusetts -- which is precisely what *Twombly* precludes.[4]  *See In re*

---

[4] Plaintiffs' assertion that *Twombly* applies only to antitrust "claims that lack substantive factual allegations of conspiracy and instead assert an inference of conspiracy," Pls. Opp. at 15, is wrong.  *See, e.g., Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*, 07-11344, 2008 WL 4457861, at *2 (D. Mass. 2008) (applying *Twombly*'s plausibility standard to non-antitrust claims); *Nisselson v. Lernout*, 568 F. Supp. 2d 137, 141 (D. Mass. 2008) (Saris,

*LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219, at *12 ("[w]hile the allegations allow one to imagine that a conspiracy may have occurred, *imagination is not enough*") (emphasis added). Significantly, the court in *Kendall* applied *Twombly* in affirming the dismissal of an antitrust complaint despite allegations that the defendants participated in the management of the consortiums that allegedly fixed prices. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008); *Kendall v. Visa U.S.A. Inc.*, No. C 04-04276, 2005 WL 2216941, at *2 (N.D. Cal. July 25, 2005).

As demonstrated in Defendants' moving brief, since the Supreme Court decided *Twombly*, courts have consistently applied its "plausibility" standard to dismiss antitrust conspiracy claims based on allegations significantly more detailed than Plaintiffs have alleged here. *See, e.g., In re Elevator Antitrust Litig.*, 502 F.3d at 50-53 (affirming dismissal despite allegations of specific meetings to discuss prices and market divisions, exchanges of price quotes, parallel pricing, and investigations and fines by antitrust authorities for same conduct); *In re LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219, at **1-5, **15-19 (dismissing complaint despite allegations of market concentration, barriers to entry, membership in industry trade associations and a prior rating bureau, similar or identical price and cost structures, and rates exceeding costs); *In re Digital Music Antitrust Litig.*, 06 MDL No. 1780, 2008 WL 4531821, at **5-9 (S.D.N.Y. Oct. 9, 2008) (dismissing antitrust complaint despite allegations of participation in industry trade associations, actions against economic self-interest, parallel pricing and high barriers to entry); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1019-25 (N.D. Cal. 2007) (dismissing complaint under *Twombly* despite allegations of on-going criminal investigation of same alleged price-fixing conspiracy, highly concentrated

---

J.) (same).  If the Supreme Court had intended to limit *Twombly* to antitrust cases that rely exclusively on an inference of a conspiracy, the Court would not have needed to "retire" the motion to dismiss standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), as *Conley* was not an antitrust case. *Twombly*, 127 S. Ct. at 1968-69.

two-participant market, series of specific coordinated price increases and new product introductions following attendance at specific trade shows and meetings, and a "historically unprecedented change in pricing structure"); *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 961-65 (N.D. Cal. 2007) (dismissing claim despite allegations of opportunities and motives to conspire, similar "cost structures" among defendants, concentrated market with high barriers to entry and a history of "price leadership," and a series of "rapid," parallel price increases "unjustified by changes in defendants' costs").

II.   **DEFENDANTS' PARTICIPATION IN STATUTORILY AUTHORIZED RATING BUREAUS IN OTHER STATES DOES NOT PROVIDE AN ADEQUATE BASIS FOR A CLAIM OF A CONSPIRACY TO SET RATES IN MASSACHUSETTS.**

Plaintiffs accept that they have to link the statutorily authorized rating bureaus in other states with the purported conspiracy in Massachusetts.  Pls. Opp. at 21-22.  Plaintiffs, however, ignore that they have to make "an adequate allegation of *facts* linking transactions in [a place outside the jurisdiction] to transactions and effects here" in order to "'nudge [their] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d at 52 (quoting *Twombly*, 127 S. Ct. at 1974) (emphasis added); *see also In re Bath & Kitchen Fixtures Antitrust Litig.*, No. 05-cv-00510, 2006 WL 2038605, at *2, *7 (E.D. Pa. July 19, 2006) (dismissing claim for failure to adequately plead concerted action, despite allegations of European Commission and DOJ investigations).

Plaintiffs have not alleged any factual link, let alone a "direct" one, between Defendants' rating bureau activity in other states and title insurance rates in Massachusetts.  Moreover, the Amended Complaint does not even contain any allegations of temporal or geographic proximity between conduct in rating bureau states and conduct in Massachusetts.  Plaintiffs fail to allege that rates changed, let alone increased on a concerted basis, in Massachusetts following rating bureau meetings in other states.  Lacking an allegation of a plausible link to Massachusetts title

insurance rates, all of the Amended Complaint's allegations regarding conduct in rating bureau states are irrelevant and certainly do not constitute a "direct" allegation of a conspiracy in Massachusetts.[5]  In fact, Plaintiffs assert that it is enough to state in a conclusory manner that "conspiracies" happened in four states -- albeit in the form of statutorily authorized and openly disclosed rating bureaus -- so it is reasonable to assume that price fixing occurred in Massachusetts.  Pls. Opp. at 20.  Plaintiffs cite no authority supporting their position.  As explained in Defendants' opening memorandum, Def. Mem. at 9-10, alleging that "if it happened there, it could have happened here" is inadequate to avoid dismissal.  *In re Elevator Antitrust Litig.*, 502 F.3d at 52; *In re Potash Antitrust Litig.*, 954 F. Supp. 1334, 1354 (D. Minn. 1996) (finding that a conspiracy in the United States could not be inferred from or premised upon defendants' participation in a lawful price setting organization in Canada), *aff'd sub. nom. Blomkest Fertilizer, Inc. v. Potash Corp. of Sask., Inc.*, 203 F.3d 1028 (8th Cir. 2000).  Plaintiffs claim that they "detail the linkage," citing paragraphs 126-31 of the Amended Complaint, Pls. Opp. at 22, but those paragraphs allege no facts suggesting that Massachusetts rates were subject to an agreement in any rating bureau state.  Plaintiffs' reliance on *Arnold Pontiac-GMC v. Budd Baer, Inc.*, 826 F.2d 1335 (3d Cir. 1987), Pls. Opp. at 18, further highlights the inadequacy of their pleading.  In *Arnold*, the "direct evidence" was not the mere fact that the conspirators met, but rather the fact that at the meeting, they explicitly agreed to work together to exclude the plaintiff from the relevant market.  *Id.* at 1336.  The meeting was further memorialized in a

---

[5] Rating bureaus are common in many states for many different lines of insurance.  For instance, the Commonwealth of Massachusetts statutorily authorizes insurers selling various lines of insurance (but not title insurance) to form licensed "rating organizations" to jointly submit rates to the Insurance Commissioner for review.  *See, e.g.,* Mass. Gen. Laws Ann. ch. 174A § 6(b) (allowing joint rate submission for fire, marine, and inland marine insurance); Mass. Gen. Laws Ann. ch. 175A § 6(b) (allowing joint rate submission for certain types of casualty insurance). Merely alleging the existence of such a rating bureau in one state does not give rise to an inference of a price fixing conspiracy for that line of insurance in another state.  For example, the existence of a rating organization in Massachusetts that submits fire insurance rates to the Insurance Commissioner on behalf of its insurance company subscribers in no way suggests that those same subscribers somehow conspired to fix fire insurance rates in any other state.

memorandum which stated that the dealers had agreed to a group boycott of the manufacturer if the manufacturer allowed the plaintiff to act as a dealer for a certain model of car produced by the manufacturer. *Arnold Pontiac-GMC v. General Motors Corp.*, 786 F.2d 564, 569 (3d Cir. 1986). Plaintiffs here cannot point to even remotely similar allegations.

Plaintiffs' attempt to distinguish *Potash* on the grounds that there was no direct evidence of a conspiracy in the market at issue, Pls. Opp. at 17, highlights their failure to adequately allege a conspiracy in Massachusetts. As Plaintiffs recognize, the conspiracy in *Potash* was insufficiently alleged because a conspiracy to set prices in one market could not be inferred or premised upon defendants' participation in a lawful price setting organization in another market. *Blomkest Fertilizer, Inc.*, 203 F.3d at 1035. Similarly, the Amended Complaint alleges that Defendants jointly set prices in rating bureau states, but Plaintiffs fail to identify any alleged fact suggesting that the rating bureaus had any involvement with the title insurance market in Massachusetts. *Cf. In re Elevator Antitrust Litig.*, 502 F.3d at 52 (affirming dismissal and finding insufficient averments of anticompetitive conduct in another market because "absent any evidence of linkage between such foreign conduct and conduct here -- is merely to suggest . . . that 'if it happened there, it could have happened here'").

Plaintiffs do not dispute that the Amended Complaint must include the "specific time, place or person involved in the alleged conspirac[y]," *Twombly*, 127 S. Ct. at 1971 n.10, but they fail to identify the individuals who were involved in the rating bureau meetings who set the Massachusetts rates, when or how the Massachusetts rates were set in those other states, which rating bureau of which state agreed to set the Massachusetts rates, and where the Massachusetts rates were set. Absent facts showing the time, place, and persons involved, no plausible link has been alleged between meetings of rating bureau in other states and rates in Massachusetts.

*Kendall*, 518 F.3d at 1048 (affirming dismissal of antitrust complaint where "the complaint does not answer the basic question:  who, did what, to whom (or with whom), where and when"); *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 577 (S.D.N.Y. 2007) (dismissing antitrust counterclaim because even though the complaint "sprinkles the words 'conspired,' 'concerted,' and 'concertedly' throughout the [complaint] [the] pleading 'furnishes no clue as to which [employees] supposedly agreed, or when and where the illicit agreement took place'").

Plaintiffs claim in their Opposition that Defendants "know precisely when, where, how and which individual company representatives" met in the four rating bureau states, and that "these same details provide fair notice of Plaintiffs' allegations of a Massachusetts conspiracy." Pls. Opp. at 20.  But, the Amended Complaint fails to allege that Defendants agreed to fix *Massachusetts* title insurance rates at rating bureaus in any of those four other states, or when, where, how and which representatives did so.  Plaintiffs ignore their pleading obligations, and do not provide notice of any conspiracy to fix rates in Massachusetts.

Lacking factual allegations to support an alleged conspiracy in Massachusetts, Plaintiffs point to cases in which courts and other authorities have suggested the relevance of prior unlawful conduct, and contend that the actions of Defendants in the rating bureau states will ultimately be found to be unlawful by courts in other jurisdictions (even going so far as to include an extended but irrelevant discussion of the state action doctrine, Pls. Opp. at 16-17, a defense not even raised by Defendants in this motion).  But rating bureau participation in rate setting is expressly authorized by statute in New York, New Jersey, Pennsylvania, and Ohio.[6] Plaintiffs do not dispute that the rating bureaus in those states acted pursuant to these state

---

[6] *See* N.Y. Ins. Law § 2306; N.J. Stat. § 17:46B-42(b); 40 P.S. § 910-37(b); Ohio Rev. Code § 3935.04.  This statutory authorization negates any implication that joint rate setting activity in rating bureau states suggests similar activity in Massachusetts.

statutes, but rather argue that those states did not "actively supervise" the rate setting and therefore the federal antitrust laws could apply. Pls. Opp. at 16. While Defendants believe those states provided "active supervision," even if they did not, there is no logical basis for suggesting that Defendants would have "conspired" to engage in joint rate setting activities absent the express statutory authorization in those states. It is even less logical that any of the rating bureaus would have set rates for Massachusetts, which was outside of their statutory authorization. The attempt to extrapolate that conduct to Massachusetts is without any factual or logical basis. It simply makes no sense.[7]

Finally, allegations that Defendants' participation in rating bureaus and trade associations provided "opportunities" to conspire, Pls. Opp. at 29-30, add nothing to Plaintiffs' claim. Plaintiffs' laundry list of trade association meetings in Massachusetts, Pls. Opp. at 5, includes no factual allegations tying these meetings to any alleged conspiracy or any subsequent coordinated increase in title insurance rates in Massachusetts. Courts -- including the Supreme Court in *Twombly* -- have repeatedly recognized that participation in an industry group and the associated opportunity to conspire is not adequate to support a Section 1 claim. *See, e.g., Twombly*, 127 S. Ct. at 1971 n.12; *In re Digital Music Antitrust Litig.*, 2008 WL 4531821, at *7 ("[T]he Supreme Court observed in *Twombly* that the mere participation in an industry trade association would not yield an inference of improper inter-firm communication. Plaintiffs' allegation concerning the [trade association] in this action suffers a similar fate. That fact is, at best, neutral and thus adds

---

[7] Indeed, there has been no finding that those four states did not actively supervise rates, and mere allegations in ongoing litigation (or litigation that ended many years before the putative class period here) in other jurisdictions regarding the level of supervision of insurance regulators in other states do not make a conspiracy to fix prices in Massachusetts plausible. *See In re Digital Music Antitrust Litig.*, 2008 WL 4531821, at *7 (explaining that "'prior conspiracy is not alone probative of present collusion'") (quoting 6 Philip Areeda & Herbert Hovenkamp, Antitrust Law § 1421b(1)); *see also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d at 1024 (stating that even an antitrust investigation "carries no weight in pleading an antitrust conspiracy claim"). Moreover, while it is of no relevance to Massachusetts rates, the issue of "active supervision" in the four rating bureau states should be determined by courts in those four jurisdictions.

nothing that would nudge [plaintiffs'] claims across the line from conceivable to plausible.") (internal citations and quotations omitted).  *See also* Def. Mem. at 11 and cases cited therein. Again, Plaintiffs plead no facts suggesting that Defendants conspired to fix prices at trade association meetings, and Plaintiffs' reliance on purported opportunities for collusion, Pls. Opp. at 29-30, fails.  As the case law demonstrates, a list of trade association meetings is not sufficient to assert an antitrust claim.  If it were, virtually every industry could be subject to such claims.

## III.   PLAINTIFFS' ALLEGATIONS OF PRE-*TWOMBLY* "PLUS FACTORS" ARE INSUFFICIENT UNDER *TWOMBLY*.

Plaintiffs argue that allegations of "plus factors," such as motive, concentrated industry structure, and supra-competitive pricing, are sufficient to allege a conspiracy.  Pls. Opp. at 25. *Twombly* itself rejected similar allegations, 127 S. Ct. at 1971, and "plus-factors" are not sufficient to plead a plausible conspiracy.  *See, e.g.*, *Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, 516 F. Supp. 2d 270, 291 (S.D.N.Y. 2007) ("plus factors . . . do not constitute plausible grounds to infer an agreement"); *Schafer v. State Farm*, 507 F. Supp. 2d 587, 596 (E.D. La. 2007) (finding that "the *Twombly* ruling supersedes any articulation of the 'plus factor' test"); *In re Late Fee*, 528 F. Supp. 2d at 965 (alleged "plus factors" did not "move[] the claim of conspiracy from the realm of the 'conceivable' to the 'plausible'" where "defendants' 'parallel conduct . . . could just as well be independent action'").  Even the old law review article cited by Plaintiffs, Pls. Opp. at 25, undercuts their position by strongly *criticizing* the "plus factors" relied on by Plaintiffs as having little probative value because they do not adequately "distinguish between conscious parallelism and conspiracy."[8]  Michael Blechman, *Conscious*

---

[8] The Supreme Court in *Twombly* did not cite the article for the proposition that "plus factors" are sufficient but rather that certain alleged *conduct* could provide "plausible inference of conspiracy."  127 S. Ct. at 1966 n.4. Examples of such conduct alluded to in the article included imposition of penalties upon participants for price cutting and the supply of explanations of pricing errors to competitors -- facts that are not alleged in this case.  *See* Blechman, 24 N.Y. L. Sch. Rev. at 899.

*Parallelism, Signaling and Facilitating Devices: The Problem of Tacit Collusion Under the Antitrust Laws*, 24 N.Y. L. Sch. Rev. 881, 898 (1979).

Thus, for example, the treatise cited by Plaintiffs denounces "motive" as a worthless indicator of collusion. *See* 6 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶¶ 1434c, 1434c1, 1434c2 ("motivation" is merely "synonymous" with "interdependent parallelism," which is not a § 1 violation, and "conspicuous by its rarity is the occasional court suggesting that conspiratorial motivation" suffices); *see also* Blechman, 24 N.Y. L. Sch. Rev. at 898. The courts agree. "'[M]otive to conspire' is nothing more than an assertion of interdependence." *In re Digital Music Antitrust Litig.*, 2008 WL 4531821, at *7 (allegations of motive to conspire insufficient to infer that defendants' "parallel conduct resulted from agreement"). Put simply, "[i]f a motive to achieve higher prices were sufficient [to plead a Sherman Act claim] every company in every industry could be accused of conspiracy because they all would have such motive." *In re Late Fee*, 528 F. Supp. 2d at 964. *Fuentes v. South Hills Cardiology*, 946 F.2d 196, 202 (3d Cir. 1991), the case on which Plaintiffs principally rely, Pls. Opp. at 26, does not help Plaintiffs. The complaint in *Fuentes* alleged that four doctors requested that a hospital deny the plaintiff staff privileges and the hospital excluded the plaintiff in response. 946 F.2d at 201. The complaint in *Fuentes* contained detailed allegations about how and when the conspiracy was formed. *Id*.

Plaintiffs also advance the implausible theory that Defendants must have conspired to fix rates in Massachusetts and the other non-rating bureau states in order to hide from state regulators in the rating bureau states the allegedly "supra-competitive" rates charged for title insurance in those states. Pls. Opp. at 18. The speculation that Defendants must conspire to fix rates in Massachusetts (and presumably in over 40 other states) to cover up a conspiracy in a

handful of rating bureau states -- where proposed rates are filed with and regulated by the state agencies -- does not come close to passing *Twombly*'s plausibility standard. The allegations of a related case on which Plaintiffs rely, Pls. Opp. at 16 n. 6, show that Defendants are not conspiring to set supra-competitive rates in other states in order to disguise supra-competitive rates in New York: According to the complaint filed in the New York action, New York residential title insurance rates "are roughly 67% higher than the national average." *See Dolan* Compl. ¶ 81 (attached as Exhibit A to the accompanying Declaration of David G. Thomas).

Allegations of market concentration or high prices are similarly inadequate.[9] While they describe it as "outrageous," Pls. Opp. at 1, Plaintiffs do not challenge the case law (*see* Def. Mem. at 11-12) explaining that the high rates and the uniformity of rates alleged by Plaintiffs, Pls. Opp. at 2-3, 8-9, 27, 31, would be expected in a market such as Massachusetts with few participants and therefore do not plausibly suggest an agreement.[10] *Twombly*, 127 S. Ct. at 1966. "Increased profits in a concentrated industry, absent evidence of an agreement to artificially inflate profits, does not alone state an antitrust claim." *In re LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219, at *18. "In a homogeneous industry each major player has the same incentive to charge the same surcharge and realize the same profit margin. These circumstances do not indicate anticompetitiveness, they indicate a close and competitive industry." *Id. See also*

---

[9] Plaintiffs argue that title insurance rates in Iowa somehow evidence the "excessive nature" of title insurance premiums in Massachusetts. Pls. Opp. at 10. This is a meaningless and misleading comparison. In 1947, the Iowa General Assembly prohibited the sale of title insurance in Iowa. S.F. 370, 52d Gen. Assmb., ch. 258 § 5, at 333-34 (Iowa 1947) (enacting Iowa Code § 515.48(10)). Instead, the state offers a state-sponsored Title Guaranty Program which provides additional protection "as an adjunct to the abstract-attorney's title opinion system." Iowa Code § 16.3(15); *see also* Iowa Code § 16.91. Obviously, the costs of this state-run guaranty program are not comparable to the costs of running a commercial title insurer.

[10] Prices in concentrated markets tend to be higher than those in other types of markets, and fluctuate independently of supply and demand. *See In re Digital Music Antitrust Litig.*, 2008 WL 4531821, at *7 ("There is no agreement, however, merely because an oligopolist charges an inflated price knowing (or even hoping) that other oligopolists will match his high price. Such is bald conscious parallelism, and, as the Supreme Court has stated, 'parallel conduct, even conduct consciously undertaken' does not itself state an antitrust conspiracy.") (citing *Twombly*, 127 S. Ct. at 1966).

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993) ("Tacit collusion, sometimes called oligopolistic price coordination or conscious parallelism, describes the process, not in itself unlawful, by which firms in a concentrated market might in effect share monopoly power, setting their prices at a profit-maximizing, supra-competitive level by recognizing their shared economic interests and their interdependence with respect to price and output decisions.").

Finally, Plaintiffs suggest that Defendants agreed with one another to pay substantial kickbacks to third party agents and then to recover these amounts through their higher rates.  Pls. Opp. at 20.  Again, Plaintiffs plead no facts suggesting an agreement and cannot point to any facts.  In any event, these allegations do not implicate the federal antitrust laws.  In rejecting a price-fixing claim based on allegations of kickbacks, the *Rick-Mik* court stated that "[a]ll that is alleged is that Equilon receive[d] 'kickbacks' (or perhaps commissions) from banks for processing the transactions of Equilon's franchisees.  Such an arrangement does not violate antitrust laws."  *Rick-Mik Enters. Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 976 (9th Cir. 2008).  Indeed, *Twombly* rejected comparable claims that competitors engaged in parallel conduct that included "making unfair agreements[,] . . . providing inferior connections[,] . . . overcharging, and billing in ways designed to sabotage." *Twombly*, 127 S. Ct at 1962.  This conduct did not show a conspiracy:  "even if the [the defendants] flouted the 1996 Act in all the ways the plaintiffs allege . . . there is no reason to infer that the companies had agreed among themselves" to violate the Sherman Act. *Id.* at 1971.

Perhaps more fundamentally, title insurers have no plausible motivation to agree with each other to pay kickbacks.  Kickbacks, by their nature, are designed to divert business from one competitor to another.  They are hardly an indication that no competition exists.  Indeed, it

-13-

would make far more economic sense for members of a conspiracy to agree to minimize payments to third parties.  Therefore, even if allegations of kickbacks could be proven, they would, if anything, suggest the absence of conspiracy.[11]

## IV.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE CORPORATE PARENTS.[12]

Plaintiffs' Opposition does not remedy the Amended Complaint's silence as to any alleged agreement between the Corporate Parents -- not members of any rating bureau -- and any other Defendants.  Plaintiffs ignore the authority cited by Defendants and cite inapposite cases. Pls. Opp. at 32-33.  Both *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV409, 2006 WL 1699603, at *7 (D. Conn. Jun. 19, 2006), and *In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 351-52 (S.D.N.Y. 2005), were securities class actions, decided before *Twombly*, in which courts found that particular subsidiaries and individuals were legally responsible under the securities laws for alleged misstatements made by the parent companies.  Neither case provides any basis for holding that the conclusory allegations here adequately state a Sherman Act conspiracy claim against the Corporate Parents under *Twombly*.  To the extent Plaintiffs' reliance on *In re La Branche,* 405 F. Supp. 2d at 352*, is an attempt to rely on "group pleading" and lump the Defendants together, Plaintiffs are wrong.  Group pleading is not a mechanism to hold the corporate parents liable under the antitrust laws.  *See Brennan v. Corcord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136-37 (N.D. Cal. 2005) (dismissing Section 1 claim against holding companies where "there are no allegations in the complaint specifically connecting [the holding companies] to the alleged conspiracy"); *Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F. Supp. 744,

---

[11] "[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy."  *Matsushita Electric Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

[12] This action is stayed as to LandAmerica Financial Group, Inc. pursuant to its filing of a voluntary petition for relief under chapter 11 of title 11 of the United States Code, entitled *In re LandAmerica Financial Group, Inc., et al.*, Case No. 08-35994 (E.D. Va.).  *See* 11 U.S.C. § 301(b).

750 (E.D. Va. 1987) (dismissing complaint seeking to hold parent corporation liable for the anti-competitive activities of its subsidiaries where allegations in the complaint referred to actions taken by its subsidiaries and not the parent).   Moreover, according to the authority cited by Plaintiffs, a complaint must allege facts suggesting "that each individual defendant joined the conspiracy and played some role in it."  *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56573, at *13 (E.D. Pa. 2007).

Plaintiffs cite Paragraph 174 of the Amended Complaint, Pls. Opp. at 33, which is in the boilerplate section of the Amended Complaint entitled "Class Action Allegations," for the proposition that "Plaintiffs satisfy the pleading requirement by alleging that each defendant joined the conspiracy and committed acts in furtherance of it."  Neither Paragraph 174, nor any other paragraph, however, alleges that any of the Corporate Parents played any role in or joined the purported conspiracy.   The Amended Complaint seeks to hold the Corporate Parents responsible for actions by the subsidiaries, despite the well-established principle that a parent corporation "is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 685 F. Supp. 400, 403 (S.D.N.Y. 1988).

Because the Amended Complaint does not plead any facts to support an allegation of independent participation in the conspiracy or control beyond mere ownership, it fails to state a claim against the Corporate Parents.

## V.      **PLAINTIFFS FAIL TO DEFEND THEIR TWO REMAINING STATE LAW CLAIMS.**

### A.      **Plaintiffs Concede That the Court Should Decline to Exercise Supplemental Jurisdiction If It Dismisses the Federal Claims.**

Plaintiffs do not dispute that if the Court dismisses Plaintiffs' Sherman Act claim, there is no basis for federal jurisdiction and the Court should not exercise supplemental jurisdiction over

Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3); Def. Mem. at 17-18. Accordingly, if Plaintiffs' Sherman Act claim fails, Plaintiffs' state law claims should be dismissed as well.

### B.     Plaintiffs Concede That They Cannot Pursue Their State Law Claims Against Title Insurers from Whom They Did Not Purchase Title Insurance.

Plaintiffs do not dispute that they cannot pursue their claims under Massachusetts' Consumer Protection Act or for unjust enrichment against any defendant but defendants Lawyers Title Insurance Corporation and Chicago Title Insurance Company -- the only two Defendants from whom Plaintiffs purchased title insurance. Def. Mem. at 18. Indeed, Plaintiffs acknowledge that these state law claims are not "conspiracy claims." Pls. Opp. at 2, 9, 33. Accordingly, Plaintiffs' Consumer Protection Act and unjust enrichment claims should be dismissed against all other Defendants.

### C.     Plaintiffs Fail to Defend Their Claim Under the Massachusetts Consumer Protection Act.

As demonstrated in Defendants' opening brief, Plaintiffs' Massachusetts Consumer Protection Act claim, under Mass. Gen. Laws Ann. ch. 93A § 2, should be dismissed as duplicative of Plaintiffs' antitrust claim. Def. Mem. at 18-19. Plaintiffs ignore Defendants' arguments, and instead contend -- without citing to any authority[13] -- that "Defendants' acts and omissions . . . constitute 'price unconscionability' and 'unfairness' under M.G.L. c. 93A *et seq.*" Pls. Opp. at 9. Plaintiffs fail to rebut Defendants' argument that Plaintiffs' "parasitic" consumer protection claim should be dismissed as duplicative of Plaintiffs' Sherman Act claim. *West Boylston Cinema Corp. v. Paramount Pictures Corp.,* No. CIV A. 98-00252, 2000 WL 1468513,

---

[13] The only case cited by Plaintiffs in support of their Consumer Protection Act claim, *Commonwealth v. DeCotis*, 316 N.E.2d 748 (Mass. 1974), Pls. Opp. at 9, does not support Plaintiffs' position. In that case, the court found that defendants' (managers of mobile home parks) practice of charging their tenants fees for the resale of the tenants' mobile homes constituted an unfair practice under section 93A because defendants furnished plaintiffs no services whatsoever, but rather assessed the fee solely because the tenants were "in a position in which they had no reasonable alternative but to pay and to agree to pay." 316 N.E.2d 2d at 755. This is clearly not the case here. The Amended Complaint contains no allegations that Defendants rendered no services to Plaintiffs. On the contrary, the Amended Complaint alleges that Plaintiffs purchased title insurance from Defendants. *See* Am. Compl. ¶¶ 13-14.

at \*16 (Mass. Sup. Ct. Sept. 21, 2000); *In re Digital Music Antitrust Litig.*, 2008 WL 4531821, at

\*10.  Instead, Plaintiffs argue, with no support or explanation, that "the claims are distinct," Pls.

Opp. at 33, despite the fact that the allegations supporting Plaintiffs' Massachusetts Consumer

Protection Act claim simply re-state Plaintiffs' allegations in support of their Sherman Act claim.

Similarly, Plaintiffs do not dispute Defendants' argument that Plaintiffs failed to

adequately allege injury unrelated to the alleged price fixing agreement.  Def. Mem. at 19 n.11.

Plaintiffs' repeated references to insurance rates as "excessive" or "over-priced," *see* Pls. Opp. at

9-12, add nothing to Plaintiffs' claim.  Plaintiffs provide no authority for their untenable position

that a 93A claim can be sustained simply because a plaintiff claims that the price paid for goods

or services is too high.

### D.      Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.

As set forth in Defendants' opening brief, Plaintiffs' claim for unjust enrichment fails

because the benefits conferred on Defendants were the result of a valid express contract.  Def.

Mem. at 19-20.  "Where such a contract exists," as the title insurance policies do here, "the law

need not create a quantum meruit right to receive compensation for services rendered."

*Boswell v. Zephyr Lines, Inc.*, 606 N.E.2d 1336, 1342 (Mass. 1993).

Plaintiffs argue that "[c]ourts in Massachusetts and elsewhere have upheld unjust-

enrichment claims where the unjust enrichment arose from matters outside an express contract."

Pls. Opp. at 34.  Here, the alleged unjust enrichment was the rate charged pursuant to the

contract.  Plaintiffs fail to point to any Massachusetts authority in support of their argument, and,

instead, rely on non-binding decisions from other jurisdictions.  In any event, Plaintiffs' out-of-

state authorities are readily distinguishable.  *See Pierce Cty. v. State*, 185 P.3d 594, 618-19

(Wash. Ct. App. 2008) (claim based on quasi-contract principles not barred because the contract

did not explicitly cover the subject matter in dispute); *Stand Energy Corp. v. Columbia Gas*

*Transmission Corp.*, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005) ("where the express contract between the parties does not apply or subsequent conduct not covered by the express contract may support an implied agreement, unjust enrichment may be asserted"); *Halver v. Welle*, 266 P.2d 1053, 1057 (Wash. 1954) (claim for unjust enrichment allowed despite the existence of express contract where homeowner overpaid contractor under the terms of the express contract and sued to recover for the overpayment).  The court's opinion in *Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 116 (D.D.C. 2007), which Plaintiffs point to because the court in that case certified "for class treatment unjust enrichment claims arising from illegal price fixing," Pls. Opp. at 34, concerns the approval of class settlement in that case, and is thus entirely irrelevant to Plaintiffs' argument.  In *Singleton v. Naegeli Reporting Corp.*, 175 P.3d 594, 596 (Wash. Ct. App. 2008), in an opinion concerning a motion for reconsideration of a claim dismissed under Washington's Consumer Protection Act, the court mentioned that the trial court denied dismissal of an unjust enrichment claim without any explanation of the grounds for the trial court's decision.  In sum, none of Plaintiffs' out-of-state authorities provide any support for Plaintiffs' position.

Finally, Plaintiffs assert that because the unjust enrichment claim arises from Defendants' alleged antitrust violations, Defendants' benefit was "unjust under the circumstances."  Pls. Opp. at 33.  As Plaintiffs have failed to adequately plead any antitrust violation, however, they have failed to establish that the collection of title insurance rates in Massachusetts was unjust.

## VI.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AND WITHOUT FURTHER LEAVE TO AMEND.

Plaintiffs request leave to amend their Amended Complaint again without any indication of what more they could plead. Pls. Opp. at 34.  Plaintiffs' request should be denied.  A ruling following a motion to dismiss is presumed to be with prejudice. *Segelman v. City of Springfield*,

561 F. Supp. 2d 123, 125 (D. Mass. 2008) (citing *United States of America ex rel. John C. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004)).   "Particularly where, as here, Plaintiff has had an opportunity to review and amend the complaint, and where its contents still cannot withstand analysis, no reason exists to depart from established precedent." *Segelman*, 561 F. Supp. 2d at 125.   After two attempts forcing Defendants to file two motions to dismiss, Plaintiffs still offer no factual basis for proceeding with their claim.   Plaintiffs have already failed twice to meet the required pleading standard, and do not explain how they will be able to do so the third time around.   Accordingly, the Amended Complaint should be dismissed with prejudice because any further amendment would be futile.

## <u>CONCLUSION</u>

For all the foregoing reasons and the reasons previously stated, the Court should dismiss the Amended Complaint with prejudice.

Dated: February 19, 2009

Respectfully submitted,

/s/ Gary R. Greenberg
Gary R. Greenberg (BBO No. 409420)
David G. Thomas (BBO No. 640854)
**GREENBERG TRAURIG, LLP**
One International Plaza
Boston, Massachusetts 02110
Telephone: (617) 310-6000
Facsimile: (617) 310-6001
greenbergg@gtlaw.com
thomasda@gtlaw.com

- and -

James I. Serota
Kenneth A. Lapatine
Stephen L. Saxl
Anastasia A. Angelova
**GREENBERG TRAURIG, LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
serotaj@gtlaw.com
lapatinek@gtlaw.com
saxls@gtlaw.com
angelovaa@gtlaw.com

*Attorneys for Defendants The First American
Corporation, First American Title Insurance
Company, and United General Title Insurance
Company*

/s/ R. Bruce Allensworth
R. Bruce Allensworth
**K&L GATES**
State Street Financial Center
One Lincoln Street
Boston,  Massachusetts  02111-2950
Telephone:  (617) 261-3100
Facsimile:  (617) 261-3175
bruce.allensworth@klgates.com

-and-

Barry R. Ostrager
Kevin J. Arquit
Patrick T. Shilling
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
bostrager@stblaw.com
karquit@stblaw.com
pshilling@stblaw.com

*Attorneys for Defendants Chicago Title*
*Insurance Company, Fidelity National Title*
*Insurance Company, Fidelity National*
*Financial, Inc., Ticor Title Insurance Company,*
*Commonwealth Land Title Insurance Company,*
*and Lawyers Title Insurance Corporation*

/s/ Thomas M. Looney
Thomas M. Looney
**BARTLETT HACKETT FEINBERG P.C.**
155 Federal Street, 9th Floor
Boston, MA 02210
Telephone: (617) 422-0200
Facsimile: (617) 422-0383
tml@bostonbusinesslaw.com

-and-

David M. Foster
**FULBRIGHT & JAWORSKI L.L.P.**
Market Square
801 Pennsylvania Avenue, NW
Washington, D.C. 20004-2623
Telephone: (202) 662-0200
Facsimile (202) 662-4643
dfoster@fulbright.com

-and-

Mark A. Robertson
**FULBRIGHT & JAWORSKI L.L.P.**
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3304
Facsimile: (212) 318-3400
mrobertson@fulbright.com

*Attorneys for Defendant Stewart Title Insurance
Company*

  /s/ Brian T. Moore

Brian T. Moore (BBO No. 643657)
**LOCKE LORD BISSELL & LIDDELL LLP**
399 Boylston St., 7th Floor
Boston, Massachusetts 02116
Telephone: (857) 350-9405
Facsimile: (857) 350-9420
BMmoore@lockelord.com

-and-

  /s/ David G. Greene

David G. Greene
Kevin J. Walsh
Joseph N. Froehlich
**LOCKE LORD BISSELL & LIDDELL LLP**
885 Third Avenue, 26th Floor
New York, New York  10022
Telephone: (212) 947-4700
Facsimile: (212) 812-8346
DGreene@lockelord.com
KWalsh@lockelord.com
JFroehlich@lockelord.com

*Of Counsel:*

Michael J. Gaertner
Thomas J. Cunningham
Simon A. Fleischmann
**LOCKE LORD BISSELL & LIDDELL LLP**
111 South Wacker Drive
Chicago, Illinois 60606-4410
Telephone: (312) 443-0700
Facsimile: (312) 443-0336
mgaertner@lockelord.com

*Attorneys for Defendant Old Republic National Title Insurance Company*[14]

---

[14] Plaintiffs dismissed their claims against Old Republic International Corporation and American Guaranty Title Insurance Company on November 13, 2008 (docket numbers 39 and 40).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on February 19, 2009.

   /s/ Gary R. Greenberg   
Gary R. Greenberg
